1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9               FOR THE EASTERN DISTRICT OF CALIFORNIA
10

11   DARREN GILBERT,                      Case No.  1:22-cv-00605-AWI-BAM

12              Plaintiff,
                                          **FINDINGS AND RECOMMENDATIONS**
13       v.                               **DECLINING SUPPLEMENTAL**
                                          **JURISDICTION AND DISMISSING**
14   BONFARE MARKETS, INC. dba            **STATE LAW CLAIMS WITHOUT**
     BONFARE MARKET #43, et al.,          **PREJUDICE**
15
              Defendants.
16

17

18          Plaintiff Darren Gilbert ("Plaintiff") initiated this action on May 20, 2022.  (Doc. 1.)  The

19   complaint asserts a claim for injunctive relief arising out of an alleged violation of the federal

20   Americans with Disabilities Act, a claim for damages pursuant to California's Unruh Act, and a

21   claim for injunctive relief under state law.   (*Id*.)  No defendant has appeared in this action,

22   default has been entered against all defendants, and Plaintiff has filed a notice of voluntary

23   dismissal of Defendant Bonfare Markets, Inc. dba Bonfare Market #43.  (*See* Docs. 8, 10, 17, 19,

24   25.)  Plaintiff has filed a motion for default judgment against remaining Defendants Sameer

25   Abdulwahid Nagi, Sanaa A. Obaid, and Stop ' N ' Save, Inc. ("Defendants")  (Doc. 21.)  The

26   Court will not address Plaintiff's pending Motion for Default Judgment until after resolution of

27   these Findings and Recommendations.

28
                                         1

On December 27, 2022, the Court ordered Plaintiff to show cause why the Court should not decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim for the reasons stated in *Vo v. Choi*, 49 F.4th 1167 (9th Cir. 2022) and *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021).  (Doc. 27.)  Plaintiff filed a response on January 13, 2023.  (Doc. 28.)  For the reasons discussed below, the Court recommends declining supplemental jurisdiction and dismissing Plaintiff's state law claims without prejudice.

## I.      LEGAL STANDARD FOR SUPPLEMENTAL JURISDICTION

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "economy, convenience, fairness, and comity" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction.  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("*Gibbs*").  In *Gibbs*, the Supreme Court noted that it "has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right."  *Gibbs*, 383 U.S. at 726.  The justification for

2

1    pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to

2    litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state

3    claims, even though bound to apply state law to them." *Id.* The Court emphasized that

4    "[n]eedless decisions of state law should be avoided both as a matter of comity and to promote

5    justice between the parties, by procuring for them a surer-footed reading of applicable law." *Id.*

6          District courts may decline to exercise jurisdiction over supplemental state law claims

7    "[d]epending on a host of factors" including "the circumstances of the particular case, the nature

8    of the state law claims, the character of the governing state law, and the relationship between the

9    state and federal claims." *City of Chicago*, 522 U.S. at 173. The supplemental jurisdiction statute

10   "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a

11   federal court should consider and weigh in each case, and at every stage of the litigation, the

12   values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at

13   350).

14         The Ninth Circuit does not require an "explanation for a district court's reasons [for

15   declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-

16   (3), *San Pedro Hotel Co. v. City of Los* Angeles, 159 F.3d 470, 478 (9th Cir. 1998), but does

17   require a district court to "articulate why the circumstances of the case are exceptional in addition

18   to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining

19   jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the*

20   *Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994); *Vo*, 49 F.4th at 1169-1170 ("a district

21   court must: (1) sufficiently explain 'why the circumstances of the case are exceptional' under §

22   1367(c)(4); and (2) show that 'the balance of the *Gibbs* values provides compelling reasons for

23   declining jurisdiction in such circumstances.'"). According to the Ninth Circuit, this "inquiry is

24   not particularly burdensome." *Executive Software N. Am. Inc*, 24 F.3d at 1558*; Vo*, 49 F.4th at

25   1171. When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the

26   court must identify the predicate that triggers the applicability of the category (the exceptional

27   circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best

28   served by declining jurisdiction in the particular case (the compelling reasons)." *Executive*

                                                  3

1 | *Software N. Am. Inc*, 24 F.3d at 1558.

2 | **II.    DISCUSSION**

3 |      This Court concludes, as have numerous courts before it, the circumstances here are

4 | exceptional. *See e.g.*, *Garcia v. Maciel*, No. 21-CV-03743-JCS, 2022 WL 395316, at *2 (N.D.

5 | Cal. Feb. 9, 2022) (collecting cases).  The Ninth Circuit has held that a district court properly

6 | declined supplemental jurisdiction in a joint Unruh Act and ADA case based upon the heightened

7 | pleading requirements California imposes upon high-frequency litigants.  *Vo*, 49 F.4th.  The

8 | "high-frequency litigants" subject to those heightened pleading requirements are defined as:

9 |
10 |
11 |
> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

12 | Cal. Civ. Proc. Code § 425.55(b)(1). The definition of "high-frequency litigant" also extends to

13 | attorneys. See Cal. Civ. Proc. Code § 425.55(b)(2). "High-frequency litigants" are subject to a

14 | special filing fee and further heightened pleading requirements. See Cal. Gov. Code § 70616.5;

15 | Cal. Civ. Proc. Code § 425.50(a)(4)(A).

16 |      Plaintiff admits that he has filed more than ten complaints alleging a construction-related

17 | accessibility violation within the 12-month period immediately preceding the filing of the

18 | complaint in this action and thus would be classified as a "high-frequency litigant" had he filed

19 | this case in California state court.  (Doc. 28 at 2, Response to Order to Show Cause; Doc. 28-1,

20 | Declaration of Plaintiff Darren Gilbert in Response to Order to Show Cause.)  Indeed, as noted in

21 | the OSC, "Plaintiff Darren Gilbert appears to be a high-frequency filer, with over 200 cases filed

22 | in this district within the last two years alone."  (Doc. 27.)  Counsel for Plaintiff states in her

23 | declaration that she is not a high-frequency litigant.  (Doc. 28-2, OSC Response.)

24 |      Even if Plaintiff or counsel were not a high-frequency litigant, the Ninth Circuit has held

25 | that district courts need not adjudicate this threshold matter.  Forcing the district court to

26 | determine if Plaintiff or counsel is a high-frequency litigant would itself run afoul of the *Gibbs*

27 | values—especially comity. *Accord Brooke v. Sarodia Suncity LLC*, No. ED CV-22-1374 JGB

28 |

4

1    SPX, 2022 WL 17363913, at *4 (C.D. Cal. Nov. 3, 2022), citing *Vo*, 49 F.4th at 1173. As *Gibbs*

2    explains, "[n]eedless decisions of state law should be avoided both as a matter of comity and to

3    promote justice between the parties, by procuring for them a surer-footed reading of applicable

4    law" by the state courts. *Vo*, 49 F.4th at 1173–74, citing *Gibbs*, 383 U.S. at 726. If the federal

5    district court is required to adjudicate these threshold matters, it will "deprive the state courts of

6    their critical role in effectuating the policies underlying those reforms." *Id.*, citing *Arroyo*, 19

7    F.4th at 1213.

8         If this Court were to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim,

9    the "distinctive configuration of California-law rules—which pair a damages remedy with special

10    procedural requirements aimed at limiting suits by high-frequency litigants—would be rendered

11    ineffectual." *See Arroyo,* 19 F.4th at 1211–12. "By enacting restrictions on the filing of

12    construction-related accessibility claims, California has expressed a desire to limit the financial

13    burdens California's businesses may face for claims for statutory damages under the Unruh Act.

14    Plaintiffs who file these actions in federal court evade these limits and pursue state law damages

15    in a manner inconsistent with the state law's requirements." *Id.* at 1206-07, 1209; (Doc. 27, OSC

16    at 2.) It is not, under the *Gibbs* factors, "fair" to defendants that a plaintiff may pursue

17    construction-related accessibility claims in this Court while evading the limitations California

18    state law has imposed on such claims. In addition, to allow federal courts to become an "escape

19    hatch" for plaintiffs is also an affront to the comity between federal and state courts. *Vo*, 49 F.4th

20    (affirming the district court holding that allowing federal courts to be an 'escape hatch' for

21    plaintiffs seeking to avoid the heightened requirements would be an "affront to the comity

22    between federal and state courts.")

23         Moreover, permitting high-frequency litigants to evade California's limitations on

24    construction-related accessibility claims places tremendous strain on the federal courts. As noted,

25    Plaintiff Gilbert has filed over 200 cases in this district within the last two years alone. (Doc. 27,

26    OSC at 3.) This high-frequency filing suggests that it is precisely because the federal courts have

27    not adopted California's limitations on such claims that federal courts have become the preferred

28    forum for such claims. *See generally Garibay v. Rodriguez*, 2019 WL 5204294, at *4 (C.D. Cal.

1    2019) ("Indeed, those reasons, if true at all, do not explain why nearly 9 times more construction-

2    related accessibility actions are being filed in the Central District in 2019 than were filed in

3    2013.")  Permitting federal courts "to become an escape hatch" that allows plaintiffs like Gilbert

4    to pursue such claims offends the comity between state and federal courts.  Declining to exercise

5    supplemental jurisdiction over the state law claims early in the litigation preserves federal judicial

6    resources for the consideration of federal claims, while still allowing plaintiffs to pursue their

7    state law claims in state court.  *See e.g.*, *Brooke*, 2022 WL 17363913, at *5 ("Continuing to

8    exercise supplemental jurisdiction in these extraordinary circumstances would unnecessarily force

9    this Court to expend resources to resolve state law claims for relatively modest statutory damages

10   and attorneys' fees even after the federal claim is moot.")

11        Plaintiff Gilbert argues that fairness, economy, and convenience disfavor declining

12   supplemental jurisdiction because litigating his claims in separate forums would duplicate work,

13   increase costs, and risk inconsistent results.  (Doc. 28 at 3.)  However, the Court finds that

14   fairness favors declining jurisdiction because Plaintiff can pursue identical remedies in state

15   court.  Exercising the Court's discretion to decline supplemental jurisdiction does not deprive

16   Plaintiff of any remedies. Indeed, an ADA claim for injunctive relief remains pending in this

17   Court.

18        Accordingly, the Court concludes that California's enactment of laws restricting

19   construction-related accessibility claims, combined with the burden the ever-increasing number of

20   such cases poses to the federal courts, presents "exceptional circumstances" and "compelling

21   reasons" that justify the Court's discretion to decline to exercise supplemental jurisdiction over

22   Plaintiff's Unruh Act claim under 28 U.S.C. § 1367(c)(4).  *See Schutza v. Cuddeback*, 262 F.

23   Supp. 3d 1025, 1031 (S.D. Cal. 2017) (relying on *Hanna v. Plummer*, 380 U.S. 460, 467-68

24   (1965), for the proposition that federal courts are permitted to decline supplemental jurisdiction to

25   discourage improper forum-shopping, such as ADA plaintiffs' "use [of] federal court as an end-

26   around to California's pleading requirements").  Moreover, the Court sees no prejudice in

27   requiring Plaintiff Gilbert's state-law claims be heard in state court.  *See Garibay*, 2019 WL

28   5204294, at *6 ("[D]eclin[ing] supplemental jurisdiction does not deprive plaintiff of any

1   remedies.  Nor does it allow an ADA claim for injunctive relief to go unaddressed.").

2      For all of the foregoing reasons, it is hereby recommended that the Court, in its discretion,

3   decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act and any other state law

4   construction-related accessibility claim and that any such claims be dismissed without prejudice,

5   pursuant to 28 U.S.C. § 1367(c)(4).

6     **III.  CONCLUSION AND RECOMMENDATION**

7      Based on the foregoing, the Court HEREBY RECOMMENDS as follows:

8     1.  The Court decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act

9       claim and any other state law construction-related accessibility claim; and

10    2.  Plaintiff's Unruh Act and any other state law construction-related accessibility

11      claim be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c)(4).

12     These Findings and Recommendations will be submitted to the United States District

13  Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l).  Within **fourteen (14) days** after

14  being served with these findings and recommendations, the parties may file written objections

15  with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings

16  and Recommendations."  The parties are advised that the failure to file objections within the

17  specified time may result in the waiver of the "right to challenge the magistrate's factual

18  findings" on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

19  *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

20

21  IT IS SO ORDERED.

22   Dated: __**February 7, 2023**__    __/s/ *Barbara A. McAuliffe*__

23              UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28